# UNITED STATES
### *v.*
# GEORGE R. SHANTON.

San Juan, Criminal, No. 1950.

### CONTEMPT OF COURT.

**Contempt—Payment of Fine—Jail Sentence Stands.**

1. In a proceeding for contempt resulting in the imposition of a fine and a sentence of forty-eight hours in jail, and the party found guilty of contempt pays the fine voluntarily without notice of any appeal, this court is without power to revoke that part of the judgment which imposed imprisonment.

**Contempt—Imprisonment Suspended to Allow Pardon Application.**

2. Where in a proceeding for contempt a party is found guilty and there is imposed both a fine and imprisonment, the court has discretion to delay and suspend that portion of the sentence relating to imprisonment in order that the party found guilty of contempt may seek a pardon from the President of the United States.

**Contempt—Six Weeks' Delay Reasonable.**

3. By reason of the geographical distance of Porto Rico from Washington, where a party is found guilty of contempt, and against whom there is judgment and sentence of imprisonment, it is proper for the court to allow a reasonable time, that is to say, six weeks, before the sentence of imprisonment shall begin, in order that the person found guilty may present the matter to the President of the United States.

Opinion filed January 31, 1922.

*Mr. Ira K. Wells,* United States District Attorney for United States.

United States v. Shanton.

*Mr. Willis Sweet,* for Geo. R. Shanton.

ODLIN, Judge, delivered the following opinion:

On Saturday, the 28th of this month, this court, after a careful and prolonged hearing and upon the admission by George R. Shanton, represented by his counsel, that he was in contempt of this court and pleading for leniency, the court imposed upon the said George R. Shanton a fine of $100 and forty-eight hours of imprisonment in jail, but provided that such imprisonment should not be served immediately in order that time might be given to the respondent to arrange his affairs and his official duties as chief of the Insular police of Porto Rico, a position which he at that time held. Yesterday, the 30th day of this month, a series of conferences took place in this courthouse, which, in my judgment, constituted a procedure different from any on record in all the Federal courts of the United States since their creation, about one hundred and thirty years ago. It becomes the duty of the court to outline briefly these conferences which occurred yesterday. At 11:30 A. M. the court, by previous arrangement, received in chambers a group of some of the most distinguished citizens of Porto Rico, one half of whom at least were officials of very great importance. His Excellency, the governor of Porto Rico, was present. The Colonel commanding the United States Army in the Island of Porto Rico was present. The Honorable Juan B. Huyke, recently acting governor, was present. Various leaders of the bar of this court, the distinguished Senator, Honorable Santiago Veve, the distinguished Senator from Ponce, the Honorable Tous Soto, the heads of the various departments

of the Insular government, the Honorable Robert H. Todd, Commissioner of Immigration, and others, the court being unable to recite the names of all. It is fair to the Honorable Chief Justice of the Supreme Court of Porto Rico to state that one of the newspapers of San Juan made the erroneous statement that he was present as a member of the committee which visited the judge of this court at 11:30. This statement is a mistake. The Honorable Chief Justice authorizes me to state that his personal sympathy for George R. Shanton dates from many years back and is strong; that the entire occurrence has caused the Chief Justice great sorrow, but that his view of the law and procedure is the same as that taken by this court. At this meeting of 11:30, various addresses were made to the court, the principal address being that of the distinguished lawyer of San Juan, Honorable Charles Hartzell, who made a most earnest appeal that this court remit that part of the sentence which provided for forty-eight hours in jail. The distinguished lawyer, the Honorable Francis H. Dexter, also made a very eloquent appeal along the same lines. Other addresses were made by some of the distinguished gentlemen present at that time, including his Excellency, the governor, who stated to the court that on that very same forenoon George R. Shanton had resigned his position as chief of the Insular police and that that resignation had been accepted. It was argued that this fact should influence this court in remitting that part of the penalty imposed, which included imprisonment for forty-eight hours, but it is a matter of record in this court that the resignation of said George R. Shanton was entirely voluntary, that his Excellency the governor did not take pleasure in accepting it, that he had not requested it,

## United States v. Shanton.

but that he had accepted it. Various questions were put by the judge of this court to the gentlemen present, and it speedily developed that these gentlemen were actuated by very worthy feelings of fondness and personal friendship and admiration for George R. Shanton, but that they were hopelessly ignorant of the facts surrounding this case. I will state that I would,— and I am speaking in all seriousness,—I would rather go to jail and stay forty-eight hours there myself than to go through the strain of last Saturday and of yesterday. This court was placed in a most embarrassing and difficult position. Before discussing that further, I wish to state that when the court returned at 2 P. M., there were present in the court room over fifty of the district chiefs of the Insular police, in spotless uniform, a most imposing presence. As their spokesman, appeared the Honorable N. A. Walcott, at the head of the Insular police commission, who presented to the court a memorial or petition asking for the remission of that part of my sentence which included forty-eight hours' imprisonment. This memorial set forth that the imposition of that part of the sentence providing forty-eight hours imprisonment would operate to demoralize the Insular police force of Porto Rico. If Mr. Walcott had known the things that I know, if Mr. Walcott had known the things that the Honorable Miles M. Martin, former United States District Attorney for Porto Rico, knew, if Mr. Walcott had known the things that the Honorable Ira K. Wells, the present United States District Attorney for Porto Rico, knew, he would realize that the sentence imposed by this court, instead of demoralizing the Insular police force of Porto Rico, would tend to place it upon a much higher plane than it has been for several years past. The fact that the grand jury has

United States v. Shanton.

not yet submitted to me its complete report closes my lips regarding many matters. I have rarely listened to more eloquent addresses and more touching appeals than by the Honorable Charles Hartzell, but he reminded me of the Honorable Burke Cochran, one of the most brilliant orators in the United States, who can make a most brilliant speech when he often does not know the facts upon which he is supposed to speak. It is also noticeable and must be observed that at the hearing last Saturday, George R. Shanton, represented in this matter by the Nestor of this court, the Honorable Willis Sweet, who for years filled the most important and difficult position of Attorney General of Porto Rico, after the sentence was imposed George R. Shanton took his medicine like a man, and he stated then in this courthouse that his troubles were due to himself and that he had no fault to find with the sentence. Never has George R. Shanton personally appealed to this court for leniency. Never yet has his counsel, the Honorable Willis Sweet, appealed to this court for leniency, but this court is compelled to say that faithful and loyal and devoted friends of George R. Shanton, who are ignorant of the facts, have made to this court an appeal extremely difficult to resist.

But the presence of the chiefs of the Insular Police at 2 P. M. and the memorial presented by the Honorable N. A. Walcott did not close the exercises of yesterday. At 5:30 P. M., at the conclusion of the trial of the civil case upon which the petit jury was at work, three very distinguished gentlemen of Porto Rico, representing the most important sugar interests in this Island, appeared before the court, once more seeking that I remit the forty-eight hours of imprisonment, but I soon learned that they knew nothing about the facts of

this case. They did not know that the work of the grand jury, which would have occupied perhaps two weeks if that grand jury had had the loyal, active, efficient and bona fide support of George R. Shanton, is still in session trying to seek real criminals in important matters and to present such proper indictments to this court as they deem it is their duty to find, in which work they have been impeded, have been obstructed, have been molested by the,—I will not say direct, but by the indirect, actions of George R. Shanton. Going back once more to the meeting of 11:30, I wish to state that in spite of the eloquence of the Honorable Charles Hartzell, the speech that impressed me most was by the distinguished member of the San Juan Bar, Mr. J. Henri Brown. He made his appeal based upon the fact that this court had been influenced, unconsciously perhaps, by matters outside of the contempt case itself. J. Henri Brown was right, to a certain extent. This court was influenced thereby. It was impossible for me to eliminate from my mind certain things which I knew that were not directly connected with these contempt proceedings, and, in order that I might do George R. Shanton no injustice, I imposed a sentence of two days instead of thirty. I stated to those gentlemen yesterday, and I repeat in open court to-day, that although they disagree with me and they may be right, it is my firm conviction, it is the firm conviction of the former District Attorney of this court, it is the firm conviction of the present District Attorney of this court, that if I had the power to change this sentence one iota, I would be lowering and injuring the prestige of the United States in the Island of Porto Rico, and I wish to put on record briefly my reasons why.

United States v. Shanton.

During the months of October, November, and December I was sitting here, day after day, trying petty violations of the National Prohibition Act, the defendant in nearly every case being a poor, humble peasant of the Island. In many instances I would impose a small fine, I tried to impose a fine so that it could be paid and the respondent might return to his family. In some instances that fine could not be paid and under the rules that poor peasant had to go to jail for thirty days. After serving ten, twelve, fifteen days of that sentence, his starving wife and children and his friends come to me and ask me to discharge him from the jail. I was obliged to hold that such an action on my part would be impinging upon the executive power of the United States. If there is in the Constitution of the United States anything left that I do believe in, it is that the judicial functions, executive functions, and legislative functions should be distinct and separate. Therefore I was compelled in all those cases, most reluctantly, to state to the friends of the incarcerated peasant that their only remedy was to seek relief from the President of the United States. These cases have gone out from one end of Porto Rico to the other. Now we come to the case of George R. Shanton, a man who has occupied a most important official position in this Island. This court imposes a sentence upon him on the 28th day of this month. He complies with part of it,—he pays his fine and his costs, then he comes before me with scores of his powerful, influential, able, honorable, distinguished friends, but misguided and ignorant of all the facts of the case,—and asks me to do that which devolves only upon the President of the United States. Furthermore, in connection with the eloquent appeal of the distinguished lawyer and orator Mr. Charles Hartzell,

United States v. Shanton.

he stated that he was very clear that I had the power to do that, but I have been looking up some law since the brilliant oration of Mr. Charles Hartzell. I told these gentlemen that this matter was one of such great importance that it was my duty to ascertain how far I could go in this matter before I should reach a decision. I find that Mr. Hartzell, although a man of unusual ability, is entirely mistaken in his view of the law. I want to state right here that even if I had the power to alter this sentence, I would not do it. I would feel that the prestige and power and influence of the United States court in the Island of Porto Rico would be lowered if I altered this sentence in the least, and I would not do it. I do not wish to put myself in the attitude of doing any injustice to the United States or to George R. Shanton, but I do want to put on record the fact that I have no power to remit one hour of that sentence, even if I so desired.

In the year 1869 the Honorable Samuel Blatchford was district judge of the United States, sitting in New York city. The older members of the bar present will remember that this very able jurist was promoted to be a justice of the Supreme Court thirteen years later, in the year 1882,—now gone to his eternal rest. If any man in this court room will produce any authority higher than that, I will be glad to see it. I now wish to state what Samuel Blatchford held in 1869.

"Where a fine was imposed upon a person by this court (and the fine was $2,500, not $100), as punishment for contempt of this court committed by violating an injunction issued by this court, and it was ordered that he should stand committed until the fine should be paid, and he applied to his court to be discharged from imprisonment on the ground that he was

United States v. Shanton.

unable to pay the fine: Held, that the court would not exercise the power invoked, at least until the President should disclaim the power to relieve the applicant by a pardon. A contempt against a United States court is an offense against the United States, and not against the judge, and it is an adjudication by the court that the contempt has been committed and that amounts to a conviction and the commitment thereon is execution. This court has no power to discharge or remit the sentence, but it falls within the pardoning power vested in the President by the Constitution. Disobedience to lawful process of a court of the United States is, equally with misbehavior in its presence, as a contempt of court, within such pardoning power."

But Washington is a long ways from Porto Rico. I have no power to modify that sentence in the slightest, but I have power to extend the time within which it shall be executed. Under the order as it was dictated by me last Saturday, the forty-eight hours' imprisonment would have to be served by George R. Shanton during the present week and it would have to begin not later than noon of Thursday, February 2d. It is impossible that this matter shall be reviewed by the President of the United States within that short period. It is unfair to me that I should deprive the President of the United States —wiser than all of us—of the opportunity of saying whether or not I have erred in imposing this sentence, and it is unfair to George R. Shanton to deprive him of the opportunity to have my action reviewed by the President of the United States. Therefore, the order of this court is as follows: Upon condition that George R. Shanton will sign an agreement that he will not leave the Island of Porto Rico before the 18th day

United States v. Shanton.

of March, 1922, the execution of the sentence will be deferred. This will give six weeks in which this entire matter can be placed before the President of the United States, and with his decision we will all be content.

It is so ordered.